UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12-18-19

MEREDITH BUSHER and ELLEN BUSHER as
Co-Personal Representatives of the Estate of
Eugene L. Busher, and NANCY TUMPOSKY,

                                        Plaintiffs,

        -against-                                                    14-cv-4322 (NSR)

DESMOND T. BARRY, JR., THOMAS T. EGAN,                               OPINION & ORDER
JOHN P. HEANUE, WILLIAM M. KELLY,
FRANCIS P. BARRON, and WINGED FOOT
GOLF CLUB, INC.,

                                        Defendants,

WINGED FOOT HOLDING CORPORATION,

                                        Nominal Defendant.

NELSON S. ROMÁN, United States District Judge:

        Plaintiffs Meredith and Ellen Busher, as co-personal representatives of the Estate of

Eugene L. Busher, and Plaintiff Nancy Tumposky (collectively, "Plaintiffs"), bring this derivative

action against Defendants Desmond T. Barry, Jr., Thomas F. Egan, John P. Heanue, William M.

Kelly, Francis P. Barron ("Director Defendants"), Winged Foot Golf Club, Inc. (the "Club," and

together with Director Defendants, "Defendants"), and, nominally, Winged Foot Holding

Corporation ("WFHC"). Plaintiffs allege violations of New York Business Corporation Law §

720, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and unjust

enrichment.[1] They seek dissolution of WFHC, monetary damages to be proved at trial, permanent

---

[1] In its Opinion and Order issued on March 12, 2019, the Court found that Plaintiffs' claims are limited to those
occurring after June 16, 2008, six years before this action was initiated. *See Busher v. Barry*, No. 14-cv-4322
(NSR), Docket 227 (S.D.N.Y. March 12, 2019). Accordingly, the only event giving rise to any cause of action in
this case is a lease renewal entered into by the Club and WFHC in 2013. *See id.*; *Busher v. Barry*, No. 14-cv-4322
(NSR), Docket 244 (S.D.N.Y. Oct. 2, 2019).

1

and mandatory injunctions, and repayment to WFHC of the amounts by which the Club has been unjustly enriched.

Trial is scheduled to begin on January 7, 2020. In anticipation, both Plaintiffs and Defendants have filed numerous pre-trial motions *in limine*. (*See* ECF Nos. 273, 275 & 280 (Plaintiffs); ECF Nos. 264, 265, 268, 278 & 286 (Defendants).) This Opinion and Order addresses those motions that pertain to the issue of Defendants' liability, (ECF Nos. 273, 275 & 280 (Plaintiffs); ECF Nos. 264, 268 & 278 (Defendants)), and so much of Defendants' motion *in limine* to preclude evidence of damages as concerns their jurisdictional challenge to Plaintiffs' claim for dissolution, (ECF No. 286).[2] For the following reasons, those motions are GRANTED in part, DENIED in part, and RESERVED in part.

## BACKGROUND

The Court assumes familiarity with the facts and allegations in this case, as well as the procedural background of this case. *See, e.g.*, *Busher v. Barry*, No. 14-cv-4322 (NSR), 2016 WL 1249612, Docket 61 (S.D.N.Y. March 28, 2016) (addressing Defendants' first motion for summary judgment); *Busher v. Barry*, No. 14-cv-4322 (NSR), Docket 227 (S.D.N.Y. March 12, 2019) (addressing Plaintiffs' motion to strike certain affirmative defenses and for partial summary judgment, and Defendants' cross-motion for partial summary judgment). Additional factual information relevant to the parties' motions *in limine* is addressed in the applicable section of the Court's discussion.

Many of the parties' motions *in limine* implicate the scope of the issues remaining for trial after the Court's most recent opinions and orders. Accordingly, a brief summary of the Court's

---

[2] The Court reserves decision on the remainder of Defendants' motion *in limine* to preclude evidence of damages, (ECF No. 286), and Defendants' motion *in limine* to preclude evidence of damages based on the theoretical development of the property at issue in this case, (ECF No. 265).

recent jurisprudence is warranted. On March 12, 2019, the Court issued an Opinion and Order (the "March 2019 Opinion") disposing of Plaintiffs' motions to strike certain affirmative defenses, (ECF No. 200), and for partial summary judgment, (ECF No. 193), and Defendants' cross-motion for summary judgment, (ECF No. 189). In its March 2019 Opinion, the Court found that a six-year statute of limitations applies to Plaintiffs' claims, such that only those claims occurring after June 16, 2008, six years before this action was initiated on June 16, 2014, remain actionable. *Busher*, Docket 227, at 8, 13. Accordingly, the only event giving rise to any cause of action within the statutory period in this case is the 2013 renewal of the 1947 lease between WFHC and the Club (the "2013 lease" or "2013 lease renewal"). *Id.* at 13.

On October 2, 2019, the Court issued another Opinion and Order (the "October 2019 Opinion") responding to letters from the parties that indicated a disagreement as to the scope of Plaintiffs' remaining claims after the March 2019 Opinion. *See Busher v. Barry*, No. 14-cv-4322 (NSR), Docket 244, at 5 (S.D.N.Y. Oct. 2, 2019). The Court clarified the effect of the March 2019 Opinion, confirming that any claims arising from events preceding June 16, 2008, are time-barred and stating that the parties would not be allowed to relitigate that issue. *Id.* at 2–3. The Court also clearly defined the remaining issues for trial:

> Based on the Court's March 12, 2019, Opinion and Order and the discussion above, the primary issue of fact for trial will be identifying WFHC's corporate purpose at the time of the lease extension in 2013. If a jury determines that WFHC was indeed a for-profit business at the time of the 2013 lease extension, the following issues of fact remain: (1) whether Plaintiffs failed to object to the 2013 lease extension in such a way that they can be deemed to have acquiesced, ratified, or waived their right to object to the 2013 lease extension; (2) whether Director Defendants caused the loss or waste of WFHC's assets due to neglect of, failure to perform, or another violation of their duties in connection with their entering into the 2013 lease extension; (3) whether Defendants breached their fiduciary duties to WFHC's shareholders in connection with their entering into the 2013 lease extension and whether the Club aided and abetted that breach; and (4) whether the Club was enriched at the expense of WFHC by gaining the benefit of terms of the lease extension in 2013. Whether to grant Plaintiffs' request for dissolution of WFHC

and whether Plaintiffs are entitled to have the 2013 lease renewal rescinded under § 720(a)(2) are questions of law.

*Id.* at 4–5.  The Court warned the parties that their pretrial submissions were to be limited in accordance with the foregoing, and reminded them that "[e]vents preceding [the 2013] lease extension and outside of the statutory period are not actionable.  Therefore, Parties should not rely on or attempt to prove such events in their pretrial submissions or at trial."  *Id.* at 5.

Following the issuance of the October 2019 Opinion, Plaintiffs submitted a letter to the Court asking the Court to withdraw or stay the October 2019 Opinion and permit the Defendants to file yet another motion for summary judgment.  (ECF No. 247.)  The Court denied Plaintiffs' application and adhered to the October 2019 Opinion.  (ECF No. 256.)

The Court now turns to the parties' motions *in limine*.

## LEGAL STANDARDS

### I.  Motions *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."  *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401(a) – (b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## II.     Expert Testimony

The testimony of an expert, at trial, must be reliable and relevant. The standards governing the admissibility of expert testimony are set forth in Fed. R. Evid. 702 ("Rule 702"), which provides that "[a] witness...qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if...the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The standards have been further clarified by the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). In *Daubert*, the Supreme Court defined the role of the district court as that of a gatekeeper charged with the task of deciding whether an expert's scientific testimony satisfies Rule 702's general requirements of reliability and relevance.

*Daubert,* 509 U.S. at 597. Originally intended to screen out "junk science," *Daubert* has been extended to both technical and other specialized expert evidence. *See Kumho*, 526 U.S. 137.

In addition to screening whether or not a proposed individual qualifies as an expert as contemplated by Rule 702, the court must assess whether the purported expert' s testimony is relevant and reliable to be admissible at trial. In assessing the reliability of potential expert testimony, the court must, "...make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* Hence, the court must focus on the purported expert' s principles and methodology, not on the expert' s conclusions. Ultimately, admissibility is a question of law that rests within the discretion of the district court. *United States v. Feliciano,* 223 F.3d 102, 120 (2d Cir. 2000).

Notably, in December 2000, Rule 702 was amended to reflect the court' s gatekeeping task. With regards to assessing expert testimony for admissibility, Rule 702 now instructs district courts to ensure that: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Further, the proponent of the evidence must establish its admissibility by a preponderance of the proof. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

## DISCUSSION

Plaintiffs and Defendants have each filed five motions *in limine* to preclude certain testimonial or documentary evidence and/or to confirm the admissibility of certain evidence. Eight of those motions pertain to the issue of liability. In Plaintiffs' motions *in limine*, Plaintiffs seek (1) to confirm the admissibility of evidence concerning the purpose of WFHC that pre-dates June

16, 2008, (Pls.' Mot. *In Limine* No. 1 ("Pls. Mot. 1") (ECF No. 273)); (2) to preclude the admission of hearsay statements made in the June 8, 1947 minutes of the Club's board (the "6/8/47 board minutes," or "6/8/47 minutes"), and any witness testimony or subsequent documents that repeat the contested assertions of the 6/8/47 board minutes, (Pls.' Mots. *In Limine* Nos. 2–3 ("Pls. Mots. 2–3") (ECF No. 275)); and (3) to confirm the admissibility of statements made by nonparty George Gillespie in a June 10, 1975, letter to Joseph DioGuardi and a March 14, 1975, letter to Walter Kolb, as admissions against interest, (Pls.' Mots. *In Limine* Nos. 4–5 ("Pls. Mots. 4–5") (ECF No. 280)).

In Defendants' motions *in limine* addressing evidence of liability, Defendants seek (1) to preclude the admission of evidence and testimony regarding WFHC's classification under federal income tax law, including certain anticipated expert testimony (Defs.' Mot. *In Limine* to Exclude Evid. and Test. on WFHC's Classification Under Fed. Tax Law ("Defs. Mot. 1") (ECF No. 264)); (2) to preclude the admission of certain evidence and arguments related to WFHC's corporate purpose, including certain anticipated expert testimony, (Defs.' Mot. *In Limine* to Exclude Evid. Inconsistent with N.Y. Law and Court's Prior Decisions on the Question of Corp. Purpose ("Defs. Mot. 2") (ECF No. 268)); and (3) to preclude the admission of certain evidence and testimony related to liability as irrelevant, (Defs.' Mot. *In Limine* to Exclude Irrelevant Evid. ("Defs. Mot. 3") (ECF No. 278)). Defendants have also filed motions *in limine* addressing evidence of damages, seeking (1) to preclude the admission of evidence of monetary damages, (Defs.' Mot. *In Limine* to Exclude Evid. Related to Speculative Damages and Unreliable Op. Test. ("Defs. Mot. 4") (ECF No. 286)); and (2) to preclude the admission of testimony and evidence of damages based on the theoretical development of the property owned by WFHC and leased to the Club, including certain anticipated expert testimony (Defs.' Mot. *In Limine* to Exclude Test. and Evid. of Damages Based

on Theoretical Development of Winged Foot Property ("Defs. Mot. 5") (ECF No. 265)). The Court addresses so much of the first of these damages motions as concerns Defendants' jurisdictional challenge to Plaintiffs' dissolution claim herein. Decision on the remainder of that motion, and on Defendants' second damages motion, is reserved.

## I.   Plaintiffs' Motions *in Limine*

### A.   Plaintiffs' First Motion to Confirm Admissibility of Relevant Evidence Preceding June 16, 2008

Plaintiffs' first motion *in limine* seeks confirmation that evidence which is otherwise relevant to WFHC's corporate purpose may be admissible at trial even if the evidence pre-dates June 16, 2008. (*See* Pls.' Mem. in Supp. of Pls. Mot. 1 ("Pls. Mem. 1") (ECF No. 274).) Defendants do not oppose Plaintiffs' motion. (*See* ECF No. 292.)

As the Court determined in the March 2019 Opinion, a six-year statute of limitations applies to Plaintiffs' claims. *See Busher v. Barry*, Docket 227, at 8, 13. While it recently became necessary for the Court to remind the parties that events outside the statute of limitations period are not actionable, *see Busher v. Barry*, Docket 244, at 5, the Court has never indicated that all evidence preceding June 16, 2008, would be categorically excluded at trial. Indeed, the Court has explicitly recognized that "the primary issue of fact for trial will be identifying WFHC's corporate purpose at the time of the lease extension in 2013." *Id.* at 4. Thus, it should be clear to all parties that evidence properly introduced at trial and relevant to WFHC's corporate purpose at the time of the lease extension in 2013[3] may be admissible even if such evidence pre-dates the statute of

---

[3] The parties indicate in their submissions that all agree the question of corporate purpose is determined by the reasonable expectation of the original shareholders of WFHC. (*See, e.g.*, Defs.' Mem. in Supp. of Defs. Mot. 2 ("Defs. Mem. 2") (ECF No. 281) at 3 ("Both parties agree that the corporate purpose of [] WFHC is determined by the expectations of the original shareholders who provided capital to the corporation…")); Pls.' Mem. Opp. Defs. Mot. 2 ("Pls. Opp. 2") (ECF No. 306) at 15 (describing testimony relevant to corporate purpose as evidence "of the reasonable expectations of the original shareholders that [WFHC] was established as a for-profit").) Thus, it is all but guaranteed that the parties will need to present evidence from the earliest years of WFHC's existence at trial.

limitations period. Plaintiffs' motion is granted to the extent that relevant evidence properly introduced at trial will not be precluded solely because it pre-dates June 16, 2008.

## B. Plaintiffs' Second and Third Motions to Preclude Certain Statements in or Based on the 6/8/47 Board Minutes

In their second and third motions *in limine*, Plaintiffs argue that the Court should preclude a set of statements in the 6/8/47 board minutes purporting to explain why the Club approved an amendment to the lease agreement between WFHC and the Club, as well as any witness testimony or later documents that repeat the same assertions. (*See* Pls.' Mem. in Supp. of Pls. Mots. 2–3 ("Pls. Mem. 2–3") (ECF No. 284).) Plaintiffs aver that the statements at issue constitute inadmissible hearsay, and that any repetition of the assertions made in those statements is likely to be derivative of the inadmissible statements themselves. (*Id.* at 7–13.) Defendants oppose Plaintiffs' motions, stating that the statements contained in the 6/8/47 board minutes are clearly admissible under the hearsay exceptions for business records and ancient documents, and that there is no legal basis for Plaintiffs' proposed categorical exclusion of any assertions repeating those statements. (*See* Defs.' Mem. in Opp. to Pls. Mots. 2–3 ("Defs. Opp. 2–3") (ECF No. 294).)

For the reasons that follow, Plaintiffs' second and third motions *in limine* are denied.

### 1. The 6/8/47 Board Minutes

The history of the lease between WFHC and the Club at the center of this action dates back nearly a century. The original lease agreement, executed in 1924, provided that the Club would pay its entire income to WFHC, as rent, net of certain specified expenses. (Decl. of Adam C. Mayes in Support of Pls. Mots. 2–3 ("Mayes Decl. 2–3") (ECF No. 279) Ex. 1 at 11015–16.) On July 21, 1947, the Club and WFHC entered into an agreement replacing the foregoing provision with a new provision requiring the Club to pay only a net fixed annual rental to WFHC of $30,000.00 per year (the "1947 Lease Amendment"). (*Id.* Ex. 2 at 11801.) On June 8, 1947,

shortly before the execution of the 1947 Lease Amendment, the board of the Club, which also acted as the board of WFHC, met to discuss the lease. (*See* Pls. Mem. 2–3 Ex. A ("6/8/47 Minutes").) The board minutes recording the meeting memorialize the board's adoption of a resolution authorizing the 1947 Lease Amendment. (*Id.* at 5809.) The resolution is preceded by nine paragraphs of recitals (the "recitals" or "6/8/47 recitals") in which the board set out its explanation and justification for the 1947 Lease Amendment. (*Id.* at 5808–09.)

The recitals include statements referring to the purpose of the original lease agreement and relationship between WFHC and the Club. For example, the first recital reflects in pertinent part that,

> . . . at the time of the formation of [the Club], title to the property of the said [Club] was taken in the name of [WFHC] for the purpose of facilitating the conduct of business of [the Club] by providing a vehicle by which the legal title to the property of the said [Club] could be held for its benefit by [WFHC] . . ."

(*Id.* at 5808.) Other recitals reiterate the assertion that WFHC was formed with the purpose of benefitting the Club, adding, *inter alia*, that "since the incorporation of [WFHC] the said corporation has transacted no other business by [sic] that of holding title to the property of the [Club] . . ." (*Id.*) The 6/8/47 minutes recite that "after full and careful consideration," the recitals and resolution amending the original lease agreement were "unanimously adopted by the Board of Governors of [the Club] and by the Board of Directors of [WFHC], at this joint meeting at which a quorum of each Board was present and of which due notice had been given." (*Id.*)

## 2. Admissibility of the 6/8/47 Board Minutes and Related Statements

Plaintiffs contend that the recitals contain hearsay statements related to the corporate purpose of WFHC. Under Federal Rules of Evidence 801 and 802, hearsay is not admissible if offered to prove the truth of the matter asserted in the statement. However, there are a number of

exceptions to this proposition. As relevant here, business records, even if hearsay, are admissible if the following elements are met:

> (A) the record was made at or near the time by— or from information transmitted by— someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) ("Rule 803(6)"). The definition of a business record under the Federal Rules of Evidence includes "a memorandum, report, or data compilation" involving a business activity. *Id.* 101(b)(4). "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (internal quotation marks omitted). "'[T]he principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.'" *Elsevier B.V. v. UnitedHealth Grp., Inc.*, 784 F. Supp. 2d 286, 292 (S.D.N.Y. 2011) (quoting *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632–33 (2d Cir. 1994)).

Plaintiffs contend that the recitals are not properly admissible under Rule 803(6) for a variety of reasons. While most of Plaintiffs' concerns are unfounded, it is true that the recitals would not be admissible for the truth of events that took place decades in the past, rather than "at or near the time" at which the minutes were recorded. However, the 6/8/47 recitals were not made as historical documentation of WFHC's founding but as statements that describe the 1947 WFHC board's understanding of WFHC's purpose. Plaintiffs have not demonstrated that the recitals in the 6/8/47 board minutes could never be admissible to demonstrate this understanding, which was the basis of its rationale for adopting the 1947 Lease Amendment, under Rule 803(6), provided

Defendants lay the proper foundation for their admission at trial through the testimony of a custodian or qualified witness. The recitals were recorded in the 6/8/47 board minutes at the time of the board's meeting, and contain statements adopted by the board members present at that meeting. The statements are reflective of those board members' unanimous understanding of the corporate purpose of WFHC, which they viewed as a substantial consideration in adopting the 1947 Lease Amendment.[4]

The 6/8/47 board minutes appear to have been maintained as a regular part of WFHC's activities. They are included in one of several bound volumes of WFHC's board minutes, which are maintained in chronological order within WFHC's corporate records. (*See* Pls. Mem. 2–3 at 8; Defs. Opp. 2–3 at 6; Decl. of Aasiya F. M. Glover in Supp. of Defs. Opp. 2–3 ("Glover Decl. 2–3") (ECF No. 295) Ex. 22.) While Plaintiffs complain that the minutes are unsigned, they identify no requirement in applicable caselaw or elsewhere mandating that board minutes be signed or otherwise "adopted" in subsequent documents in order to be admissible under Rule 803(6). Rather, as the court has noted, the appropriate prerequisite for admission under Rule 803(6) is that the minutes have "sufficient indicia of trustworthiness to be considered reliable." *Saks Intern., Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987) (citing cases); *see Elsevier B.V.*, 784 F. Supp. 2d at 292. The Court finds that the 6/8/47 minutes, maintained as they were within WFHC's corporate records, alongside numerous other board meeting minute records, several of which were unsigned, (*see* Glover Decl. 2–3 Ex. 22), meet this standard. Plaintiffs' argument to the contrary, based on their assertion that the recitals were "highly unusual statements," (Pls. Reply

---

[4] Contrary to Plaintiffs' assertions, since the recitals do not rely on any outside source for their understanding of WFHC's corporate purpose, this is not a case in which the Court must review multiple layers of hearsay, and the cases cited by Plaintiffs in this regard are inapplicable. *See Rodriguez v. Modern Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009) (investigator's report which relied on statements from non-parties interviewed by investigator was inadmissible because investigator did not have personal knowledge of the information contained in his report); *Agriculture Ins. Co., Inc. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002) (accident report that relied on statements of other eyewitnesses to accident was inadmissible hearsay).

Mem. in Support of Pls. Mots. 2–3 ("Pls. Reply 2–3") (ECF No. 312) at 6), is unpersuasive. Plaintiffs do not provide any evidence or caselaw in support of their proposition that board minute recitals referencing a corporation's purpose are irregular. Indeed, it appears that such recitals would only raise red flags if Plaintiffs' theory of corporate purpose were accepted. But as the Court has reiterated time and again, that is a question for the jury.

Furthermore, Plaintiffs have not demonstrated that the source or circumstances of preparation of the recitals in the 6/8/47 board minutes bear any indicia of untrustworthiness. Plaintiffs' proposed theory that the board members present at the 6/8/47 board meeting were "specifically motivated" to fabricate the recitals "in order to falsify and conceal" WFHC and the Club's "conflicting interests in relation to the proposed rent change," (Pls. Mem. 2–3 at 9), which the Court takes no position on, is an argument that will be put before the jury at trial. It is not a basis for excluding a document that does not, on its face, appear to have been created disingenuously or in anticipation of litigation commenced nearly seventy years later.

To be sure, admitting the 6/8/47 board minutes in their entirety will not restrict the parties from offering other evidence related to the statements in the minutes, or from suggesting that facts recited in some of the minutes are not truthful and accurate. *See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11-CV-6201 DLC, 2015 WL 1137572, at *2 (S.D.N.Y. Mar. 13, 2015). For example, both Plaintiffs and Defendants make much of whether John Kadel, an original shareholder of WFHC who was present at the 6/8/47 board meeting, possessed accurate knowledge of the corporate purpose of WFHC at the time of its formation. Whether or not Kadel was motivated to adopt the assertions in the 6/8/47 board minute recitals based on his proactive role in the formation of WFHC and its corporate governance for the first 25 years of its existence goes to the weight that a finder of fact should afford the assertions, rather than the admissibility of the

assertions as a business record. Similarly, Plaintiffs' observation that the other board members present at the meeting may have lacked personal knowledge sufficient to speak to the corporate purpose of WFHC because they were not shareholders at the time of WFHC's founding may indicate that the recitals are unreliable. However, the recitals themselves, authored by the board members present at the 6/8/47 board meeting and memorialized in the 6/8/47 board minutes maintained in the ordinary course of WFHC's business activities, would be admissible if properly introduced pursuant to Rule 803(6).

As a secondary argument, Plaintiffs contend that the 6/8/47 recitals should be excluded under Federal Rule of Evidence 403. Plaintiffs aver that the recitals' "minimal (at best) probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, and ultimately misleading the jury." (Pls. Mots. 2–3 at 10.) The Court disagrees. The 6/8/47 board minute recitals are admissible under Rule 803(6) and directly bear on a central issue in this case: the corporate purpose of WFHC. Moreover, Plaintiffs' arguments that the recitals are contradicted by other terms of the original lease between WFHC and the Club, or are not supported by the founding documents, are properly addressed to the probative value that should be afforded to the recitals, not whether they should be admitted. The existence of contradictory evidence creating an issue of fact does not mean that the evidence should be excluded as confusing or misleading to the jury, whose very role is to weigh contradictory evidence and make determinations as to its relative value.

Thus, Plaintiffs have not demonstrated that the 6/8/47 recitals would not be admissible under Rule 803(6) to show the 1947 board members' understanding of corporate purpose, provided Defendants lay the proper foundation for their admission at trial. Since the Court determines that the 6/8/47 board minutes could be admissible under the business records exception to the hearsay

rule, it does not reach the issue of whether the minutes are separately admissible as an ancient document pursuant to Federal Rule of Evidence 803(16).

In addition, the Court cannot conclude that unspecified "later hearsay statements equivalent to or based upon" the recitals in the 6/8/47 board minutes are inadmissible. Plaintiffs provide no authority or rule of evidence for their assertion that any such evidence, defined extremely broadly as "witness testimony (e.g., by the Director Defendants) or later documents," should be excluded because it is "likely to be derivative of the [6/8/47 recitals]," (Pls. Mem. 2–3 at 12). For the Court to make a pre-trial determination as to whether certain evidence should be excluded, the party making the application must sufficiently specify what that evidence is, so that the Court can assess whether it is "clearly inadmissible on all potential grounds." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675–76 (S.D.N.Y. 2013) (quotation marks omitted) (quoting *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01-cv-3796, 2005 WL 1026515, at *3 (S.D.N.Y. May 2, 2005)); *see Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (citing *Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-cv-5587, 2002 WL 31780188, at *1 (S.D.N.Y. Dec. 11, 2002)). Plaintiffs recognize this same principle in their opposition to Defendants' motions *in limine*. (*See* Pls.' Opp. to Defs.' Mot. 2 ("Pls. Opp. 2") (ECF No. 306) at 17–20.) A categorical prohibition on any evidence supporting the theory of corporate purpose included in the 6/8/47 recitals, while undoubtedly a boon to Plaintiffs' case, is unwarranted on the minimal facts before the Court. Of course, Plaintiffs may raise appropriate objections to testimony or evidence based on the applicable rules of evidence at trial.

In light of the foregoing, Plaintiffs' second and third motions *in limine* are denied.

### C. Plaintiffs' Fourth and Fifth Motions to Admit Party Admissions Against Interest Made by George J. Gillespie III

In their fourth and fifth motions *in limine*, Plaintiffs seek a preemptive determination from the Court that two letters written by George J. Gillespie III in 1975 are admissible as admissions against interest by the Club pursuant to Federal Rules of Evidence 801(d)(2)(B) and 801(d)(2)(D). (Pls.' Mem. Supp. Mots. *In Limine* 4–5 ("Pls. Mem. 4–5") (ECF No. 282).) Defendants oppose the motions, contending that each of the letters is irrelevant to the remaining issues in this case, and that each is inadmissible as an opposing party statement since Plaintiffs do not demonstrate either that the Club adopted any of Mr. Gillespie's statements or that Mr. Gillespie was the Club's agent. (Defs.' Mem. Opp. Pls. Mots. 4–5 ("Defs. Opp. 4–5") (ECF No. 296).) For the reasons that follow, Plaintiffs' motions are denied.

#### 1. The DioGuardi and Kolb Letters

George Gillespie served as a member of the Club's Board of Governors and as its legal advisor in the early 1970s. (*See* Decl. of Adam C. Mayes in Support of Pls. Mots. 4–5 ("Mayes Decl. 4–5") (ECF No. 283) Exs. 1 (memorandum prepared by Mr. Gillespie for members of Club's Board of Governors on November 11, 1970) & 2 at 4489 (report to Club's membership at annual meeting dated January 7, 1973, referencing Mr. Gillespie as Chairman of Club's special Legal Committee).) Mr. Gillespie was elected President of the Club on January 7, 1973. (*See id.* Ex. 3 at 4484 (referencing Mr. Gillespie as Club President).) On January 13, 1974, Mr. Gillespie stepped down as Club President and became WFHC President, a position he held until his retirement from WFHC's board on June 8, 2008. (*See id.* Exs. 4 & 5; Defs. Opp. 4–5 at 2.) Mr. Gillespie died in 2017. (Defs. Opp. 4–5 at 2 n.2.)

In 1975, while Mr. Gillespie was serving as WFHC President, he wrote two letters in response to Club member Joseph DioGuardi (the "DioGuardi Letter"), and WFHC shareholder

and Club board member Walter Kolb (the "Kolb Letter," and together with the DioGuardi Letter, the "1975 Letters"), respectively. The DioGuardi Letter, dated June 10, 1975, reflects Mr. Gillespie's response to Mr. DioGuardi's proposals to reduce WFHC's tax liability. (*See* Pls. Mem. 4–5 Ex. A.) In the DioGuardi Letter, Mr. Gillespie notes the "difficult, and quite complicated, problems involved in the relationships of [WFHC and the Club]" and states that he has plans to meet with an attorney from the law firm Kelley Drye Newhall and Maginnes to discuss certain questions relating to the future relationship between the two entities. (*Id.*) He then proceeds to address Mr. DioGuardi's proposals that WFHC renegotiate its lease with the Club, apply for tax-exempt status under the Internal Revenue Code ("IRC"), or merge with the Club. (*Id.*) Of note, Mr. Gillespie expresses his disagreement with Mr. DioGuardi's suggestion that the Internal Revenue Service ("IRS") might consider WFHC to be the "alter ego or captive" or the Club "in view of the fact that the [Club] itself and its current members own less than one-half of [WFHC] stock." (*Id.*) He further expresses his "doubt that [an IRC] Section 501(c) exemption will be available to [WFHC]. There is no evidence in [WFHC]'s charter or by-laws of the fact that [WFHC] was organized exclusively to hold title to property, to collect the income therefrom, and to turn over the entire amount, less expenses, to the [] Club." (*Id.*) The DioGuardi Letter also contains Mr. Gillespie's opinion that a merger between WFHC and the Club was unlikely because the Club would not "wish to consider conferring dissenter's rights on outside stockholders," and his understanding that the Club would make a concerted effort to acquire a majority of WFHC's shares in the coming year. (*Id.*)

The Kolb Letter, dated March 14, 1975, addresses itself to Walter Kolb's correspondence regarding the transfer of WFHC shares. (Pls. Mem. 4–5 Ex. B.) Mr. Gillespie notes that WFHC's policy and practice at the time was, at least initially, to disapprove and refuse to record transfers

of shares to persons other than a close relative of a stockholder. (*Id.*) However, Mr. Gillespie opines that "as a legal matter, [he does] not think the Board of Directors of [WFHC] may properly withhold approval of any transfer of a share if the transfer papers are in good order. Neither [WFHC's] charter nor [its] By-laws give [the Board of Directors] the authority to pick and choose." (*Id.*) Mr. Gillespie also discusses specific instances where transfer restrictions were enforced against WFHC shareholders, stating his view that WFHC had been lucky not to face litigation with respect to such restrictions because it would likely lose the case. (*Id.*) He observes that in every case where a proposed transferee had disagreed with WFHC's actions and hired counsel to represent their interests in court, the proposed transferee simply gave up "because, obviously, one does not litigate a matter involving a share nominally worth $250." (*Id.*)

### 2. Admissibility of the 1975 Letters

In their opposition to Plaintiffs' motions, Defendants argue before reaching the issue of whether the 1975 Letters constitute party admissions that the 1975 Letters should be excluded on other evidentiary grounds. Specifically, Defendants aver that the 1975 Letters should be excluded in their entirety as irrelevant pursuant to Federal Rule of Evidence 402. They also aver that, even if relevant, the 1975 Letters are likely to waste the Court's time, mislead the jury, and unfairly prejudice Defendants, and should be excluded on those grounds pursuant to Federal Rule of Evidence 403.

As the Court has outlined in recent dispositions, *see infra* pp. 2–4, evidence offered by a party to this action will be relevant only if it bears upon one of the limited issues remaining for trial. Plaintiffs argue that the 1975 Letters meet this standard because they are pertinent to the question of whether WFHC was created to be a corporation to profit shareholders or whether, from its inception, WFHC has existed solely to support the Club. Plaintiffs rely on the Court's prior

rulings on motions for summary judgment as purported evidence of the Court's agreement that Mr. Gillespie's statements in the 1975 Letters have a "high degree of relevance" to this issue. (Pls. Reply Mem. in Support of Pls. Mots. 4–5 ("Pls. Reply 4–5") (ECF No. 314) at 1.)

To the extent Plaintiffs invoke the Court's 2016 ruling on Defendants' first motion for summary judgment, *Busher*, 2016 WL 1249612, the Court notes that the March 2019 Opinion further limited the issues in this case and is the applicable guide to the scope of the matters that may be properly addressed at trial. In that regard, the March 2019 Opinion cited the 1975 Letters in a section entitled "Background" and referred more generally to Plaintiffs' allegations of misconduct regarding transfer restrictions in addressing Plaintiffs' tolling arguments. *Busher*, Docket 227, at 3–4, 10–13. It further referenced one of Mr. Gillespie's statements in the DioGuardi Letter as potential evidence that WFHC was not formed for the exclusive benefit of the Club. *Id.* at 16. Contrary to Plaintiffs' assertions, however, the Court has not explicitly considered whether the 1975 Letters are properly admissible pursuant to Federal Rule of Evidence 402.

The information contained in the 1975 Letters is of dubious relevance to the issues remaining for trial. The Kolb Letter discusses restrictions placed by WFHC on the transfer of WFHC shares and includes Mr. Gillespie's opinion that such restrictions were in violation of WFHC's charter and by-laws and therefore illegal. All the purported transfers took place well before June 16, 2008, and were not connected to WFHC's 2013 extension of its lease with the Club. Instead, Plaintiffs maintain that the Kolb Letter is admissible because "evidence concerning the nature and value of [WFHC]'s shares [is] probative of [WFHC]'s purpose." (Pls. Reply 4–5 at 2.) To be sure, evidence that shares were initially discussed as an investment and that at annual meetings the value of shares were often considered relative to the assets and liabilities of WFHC may suggest that WFHC was a for-profit corporation, just as evidence that shares were sold at the

price of Club membership could suggest the opposite. However, no such connection is obvious between WFHC's corporate purpose and the transfer restrictions imposed on individual shares in the 1970s, as discussed in the Kolb Letter. Plaintiffs may not shoehorn a time-barred cause of action arising from the purportedly illegal practices of WFHC with respect to share transfers into this derivative suit by simply claiming that any evidence pertaining to "the nature" of WFHC shares is relevant to whether WFHC was formed to generate profits for its shareholders. *See infra* pp. 28–29, 40–41.

Mr. Gillespie's statements in the DioGuardi Letter with respect to transfer restrictions are irrelevant for the same reasons. Further, his statements regarding the Club's intention to make a concerted effort to buy WFHC shares so that it could become a majority shareholder are similarly lacking in relevance to the question of WFHC's original corporate purpose. If they bear any connection to the 2013 lease extension at all, it is based on the argument that the Club's scheme to become a majority shareholder in the 1970s ultimately facilitated its approval of lease renewals in later years. However, whether any wrongdoing took place in connection with the Club's buying of shares many years outside of the applicable statute of limitations period is not a question that may be put before the jury. The manner in which the Club gained its status as majority shareholder is not relevant to the question of whether Defendants breached their fiduciary duties or caused the loss or waste of WFHC's assets when they entered into the 2013 lease extension. Nor do the restrictions Defendants imposed on share transfers otherwise bear on any of Plaintiffs' remaining claims. *See infra* pp. 34–37.

The vast majority of Mr. Gillespie's statements regarding WFHC's tax classification under Section 501(c) of the IRC are also plainly irrelevant to WFHC's corporate purpose under state law. *See infra* 22–25. The only statement that warrants further scrutiny pertains to Mr. Gillespie's

assessment of WFHC's governing documents.  In explaining why he believes WFHC is ineligible for a federal tax exemption, Mr. Gillespie opines that there is no evidence in the WFHC charter or by-laws of the fact that WFHC was organized exclusively to hold title to the Winged Foot property and to turn over income to the Club.  While this statement, in isolation, appears to implicate Defendants' theory of WFHC's purpose, its placement within a discussion of WFHC's classification under federal tax law shows that it is concerned with whether WFHC meets the requirements for an exemption under the IRC.  As the Court explains in further detail below, the fact that there is overlap between the parties' theories of corporate purpose under state law and federal taxation law does not mean that federal taxation law is relevant to any issue in this case.

In any event, even if Mr. Gillespie's isolated opinion statement were relevant, it constitutes hearsay, and Plaintiffs have not shown that it fits into any exception to the prohibition on hearsay that would make it admissible.  Federal Rules of Evidence 801(d)(2)(B) and (d)(2)(D) permit the introduction of a hearsay statement offered against an opposing party if the statement is one the party manifested that it adopted or believed to be true, or was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.  Fed. R. Evid. 801(d)(2)(B), (d)(2)(D).  As to the first of these exceptions, a party seeking to offer a statement as an adoptive admission may show adoption or acquiescence in any appropriate manner.  *See Penguin Books, U.S.A. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 258 (S.D.N.Y. 2003) (citing Fed. R. Evid. 801(d)(2)(B), advisory comm. notes).  Here, the fact that Mr. Gillespie, who was not an officer of the Club when he wrote the DioGuardi Letter, copied the Club on his response to Mr. DioGuardi, (*see* Pls. Reply 4–5 at 7), does not suffice to demonstrate that the Club adopted any of Mr. Gillespie's statements or believed them to be true.  Likewise, Plaintiffs do not show that the Club's failure to respond or to pursue any action related to the

taxation matters discussed in the DioGuardi Letter is conduct in compliance with Mr. Gillespie's statement. *See Penguin Books, U.S.A.*, 262 F. Supp. 2d at 259 ("In the case of written statements, such as letters or other documents, mere non-response is generally considered insufficient [to show adoption by silence].").

Nor do Plaintiffs demonstrate that Mr. Gillespie was acting as the Club's agent at the time he wrote the DioGuardi Letter. No evidence has been produced to show that, although Mr. Gillespie did not have any position with the Club when he wrote the DioGuardi Letter, Mr. Gillespie was nonetheless under the Club's control and was doing its bidding when he discussed WFHC's tax status. Indeed, it is unclear why Mr. Gillespie would need authority from the Club to discuss a matter that was specific to WFHC, even if the Club had an interest in that matter.

Accordingly, Plaintiffs have demonstrated neither that the 1975 Letters are relevant to an issue in this case, nor that Mr. Gillespie's opinion statement about WFHC's governing documents in the DioGuardi Letter would be admissible under Federal Rules of Evidence 801(d)(2)(B) or (d)(2)(D) even if it were relevant. Plaintiffs' motions *in limine* four and five are therefore denied.

## II. Defendants' Motions *in Limine*

### A. Defendants' Motion to Preclude Evidence Regarding WFHC's Classification under Federal Income Tax Law

In their first motion *in limine*, Defendants seek to preclude the introduction of evidence related to WFHC's classification under federal income tax law. (Defs.' Mem. in Support of Defs. Mot. 1 ("Defs. Mem. 1") (ECF No. 262).) Specifically, Defendants implore the Court to exclude the testimony of Plaintiffs' retained tax law expert, Jeffrey A. Galant, and the testimony of fact witness Joseph J. DioGuardi as to discussions in the 1970s about tax-related proposals that were considered but never implemented by WFHC. Defendants argue that such testimony is irrelevant, unreliable, and prejudicial, and should be excluded pursuant to Federal Rules of Evidence 104,

402, 403, and 702. Plaintiffs oppose the motion, averring that the fact that WFHC did not or could

not apply for an exemption under the IRC is probative of its corporate purpose. (Pls.' Mem. Opp.

Defs. Mot. 1 ("Pls. Opp. 1") (ECF No. 301).) For the following reasons, Defendants' motion is

granted.

Defendants contend that WFHC's classification under federal tax law lacks relevance to

any issue remaining in this trial, including the question of WFHC's original corporate purpose. As

Defendants correctly note, the question of corporate purpose is a state law question. *See Burwell*

*v. Hobby Lobby Stores, Inc.*, 573, U.S. 682, 713 (2014). While there may be some overlap between

the definition of a non-profit entity under state law and the definition of a tax-exempt entity under

the IRC, the two concepts are legally distinct. As the United States Internal Revenue Service

("IRS") explains on its website,

> Nonprofit status is a state law concept. Nonprofit status may make an organization
> eligible for certain benefits, such as state sales, property and income tax
> exemptions. Although most federal tax-exempt organizations are nonprofit
> organizations, organizing as a nonprofit organization at the state level does not
> automatically grant the organization exemption from federal income tax. To
> qualify as exempt from federal income tax, an organization must meet requirements
> set forth in the Internal Revenue Code.

INTERNAL REVENUE SERVICE, APPLYING FOR TAX EXEMPTION FAQ #1, https://www.irs.gov/

charities-non-profits/frequently-asked-questions-about-applying-for-tax-exemption (last visited

Dec. 17, 2019). In other words, the fact that an organization's corporate purpose, as determined

by state law, is something other than the maximization of shareholder profit does not by itself

indicate that such organization is likely to receive a federal tax exemption. Rather, the only criteria

relevant to the determination of federal tax status is that which is explicitly set forth by the IRC.

Similarly, an organization's tax-exempt status under the IRC may not be conflated with its

corporate purpose. Doing so would wrongly suggest that an issue exclusively governed by federal

law is relevant to a state law determination.  *See Foreman v. United States*, 232 F. Supp. 134, 136 (S.D. Fl. 1964) (holding that a corporation's federal tax status is determined exclusively by federal tax law, because "it would introduce an anarchic element in federal taxation if we determined the nature of associations by State criteria rather than the special criteria sanctioned by the tax law"); *In re Reed*, 127 B.R. 244, 247 (Bankr. D. Haw. 1991) (in determining whether the IRS could levy upon certain property, holding that "[s]tate law may define the nature of the taxpayer's interest in the property, but the consequences flowing from that definition under state law are of no concern to the operation of federal tax law").

Thus, to argue to a jury that WFHC's status under federal tax law is probative of its purpose under state law would be misleading, at best.  This issue is compounded by the fact that Plaintiffs' proposed tax expert, Mr. Galant, adopts the term "for-profit business corporation" in lieu of "nonexempt" or "taxable" corporation to describe a corporation subject to federal income taxation in his Expert Report dated December 23, 2016.  (*See* Defs. Mem. 1 Ex. 1.)  While Mr. Galant's usage of that term is not meant to convey an opinion as to WFHC's status under state corporate law, its effect on jurors who are being asked to determine that very question in the context of profits is likely to be confusing and prejudicial.

In addition, Mr. Galant testified at his deposition that the IRC implicitly "assumes a business corporation is in business and has a for-profit motive" when a business corporation files its tax return on a U.S. Corporation Income Tax Return Form.  (*Id.* Ex. 2 at 63–64.)  There is no such presumption as to for-profit status, however, under New York state law, which looks to substance over form to determine corporate purpose.  *See Busher*, Docket 227 at 15–16 n.7.  This testimony, too, is likely to confuse the jury and lacks any relevance to the question they must decide.

Mr. Galant is also expected to testify as to the potential application of Section 482 of the IRC to WFHC's income.  (*See* Defs. Mem. 1 Ex. 1 at 10–12.)  Again, Plaintiffs fail to explain how WFHC's theoretical tax liability, even as it arises from the amount of rent it charges to the Club, is relevant to corporate purpose or to the 2013 lease extension, which is the only occurrence left in this action from which a claim arises.  Nor do they show how it may be relevant to any of Defendants' affirmative defenses.

In sum, Mr. Galant's testimony as to WFHC's classification under federal tax law is not relevant to any issue remaining in this case and is subject to exclusion on that ground.  The testimony of Mr. DioGuardi with respect to tax proposals considered, but not implemented, by WFHC in the 1970s warrants the same treatment.  Whether WFHC applied for, or could apply for, exemptions from federal taxation over the course of its nearly one-hundred-year existence does not make it more or less likely that WFHC's original shareholders believed they were contributing capital to an organization whose purpose was to create profits for shareholders.  Accordingly, Defendants' motion to preclude irrelevant evidence and testimony related to the classification of WFHC under federal tax law, including such testimony as is anticipated from Mr. Galant and Mr. DioGuardi, is granted.

## B.  Defendants' Motion to Exclude Certain Evidence Related to Corporate Purpose

Defendants next move to preclude Plaintiffs from introducing evidence related to WFHC's corporate purpose that is irrelevant to the expectations of WFHC's original shareholders, and to exclude certain evidence or arguments anticipated from Plaintiffs that are inconsistent with the Court's prior holdings on the issue of corporate purpose.  (Defs.' Mem. in Support of Defs. Mot. 2 ("Defs. Mem. 2") (ECF No. 269).)  Relatedly, Defendants seek to exclude certain testimony from Plaintiffs' experts, Professor Merritt Fox and Jeffrey Baliban, related to WFHC's corporate

purpose. (*Id.*) Plaintiffs oppose the motion, stating, *inter alia*, that much of Defendants' motion is inappropriately broad in the scope of evidence it seeks to preclude, and that their experts should be permitted to testify. (Pls.' Mem. Opp. Defs. Mot. 2 ("Pls. Mem. 2") (ECF No. 306).) Defendants' motion is granted in part and denied in part.

### 1. Relevant Evidence of Corporate Purpose

Defendants seek a ruling from the Court restricting evidence that will be considered relevant to the question of corporate purpose to "evidence that reflects, either directly or as recounted in documents concerning Winged Foot's general history, the words, actions, or inaction of WFHC's earliest shareholders." (Defs. Mem. 2 at 3.) Defendants cite to no specific evidence that they believe will violate their proposed principal, and that alone warrants denial of this portion of their motion. *See Weiss*, 293 F. Supp. 2d at 408 (defendants' motion "lack[ed] sufficient specificity with respect to the evidence to be excluded" where "[n]o particular documents or testimony ha[d] been identified"). "In the absence of context the court cannot categorically conclude that [] evidence is not related to matters raised by the present dispute nor can it weigh its probity." *TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (denying motion for an order precluding evidence of collateral legal disputes between plaintiff and defendant).

Moreover, Defendants' proposed preclusion of all evidence that "reflect[s] the actions or opinions of those who did not contribute to the corporation," (Defs. Mem. 2 at 4), is unduly broad. The Court cannot, for example, determine that evidence of how officers of WFHC viewed WFHC's purpose after its founding, or how/whether WFHC interacted with businesses other than the Club is irrelevant to whether WFHC was formed as a for-profit corporation. Indeed,

Defendants' proposed limitation would call into question even evidence of corporate purpose that they argue elsewhere is admissible, such as the 6/8/47 recitals.

Accordingly, the portion of Defendants' motion seeking to limit evidence of corporate purpose is denied, without prejudice to Defendants' raising specific evidentiary objections at trial.

### 2. Preclusion of Certain Legal Arguments as to Corporate Purpose

### i. *Argument that Form of Incorporation is Dispositive of Purpose*

Defendants ask the Court to preclude Plaintiffs from offering any testimony or argument that WFHC's form of incorporation is dispositive of its purpose. Such testimony or argument would contradict this Court's express ruling that the "certificate of incorporation is insufficient to overcome the genuine issues of material fact created by evidence in the record" with regard to corporate purpose. *Busher*, Docket 227 at 15–16 n.7. The Court notes that Plaintiffs' opposition indicates that they are aware of this ruling and do not intend to challenge it at trial. (Pls. Opp. 2 at 14.)

As all parties are aware, it is the Court, and not counsel or expert attorney witnesses, that instructs the jury on the law to be applied in reaching their verdict. To the extent any party or witness purports to define the legal parameters within which the jury must exercise its fact-finding function, such party or witness usurps the role of the Court. *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]lthough [] expert[s] may opine on an issue of fact within the jury's province, [they] may not give testimony stating ultimate legal conclusions based on those facts."). Either party may make an appropriate objection if instances of this nature arise during trial. Since Plaintiffs do not contest that introducing evidence or

testimony that WFHC's corporate form is dispositive to the question of corporate purpose would violate the foregoing principles, however, the portion of Defendants' motion seeking to exclude such evidence or testimony is preliminarily denied as moot.

ii.    *Arguments Related to Status of WFHC Shares Under Federal Securities Law*

Defendants also ask the Court to preclude the introduction of evidence or testimony that the Supreme Court's decision in *Landreth Timber Co. v. Landreth*, 471 U.S. 681 (1985), supports their theory of WFHC's corporate purpose. *Landreth* addresses, *inter alia*, the determination of whether an instrument is a security within the meaning of the 1934 Securities Exchange Act, 15 U.S.C.A. § 78a et seq., and the 1933 Securities Act, 15 U.S.C.A. § 77a et seq. *Landreth*, 471 U.S. at 683. Plaintiffs aver that whether WFHC shares are "securities" with investment value under federal securities laws bears on the question of whether WFHC's original shareholders purchased their shares with an expectation of receiving a financial return. (Pls. Opp. 2 at 20.)

As a preliminary matter, the Court reminds the parties, again, that expert witnesses may not opine on the law to be applied by the jurors during their deliberations. To the extent that Plaintiffs seek to introduce only factual evidence as to the classification of WFHC shares for purposes of the federal securities laws, such evidence is irrelevant to the question of WFHC's corporate purpose under state law. To be sure, the federal securities laws at issue in *Landreth* were not even in existence at the time WFHC's original shareholders purchased their shares, and for that reason alone could not possibly have informed their expectations. Plaintiffs essentially ask that they be allowed to litigate and put before a jury a matter of federal securities law that has no bearing on any issue remaining in this case and would amount to nothing more than a distraction from the core legal questions for trial. The Court declines to grant such permission. The portion

of Defendants' motion seeking to exclude evidence or testimony as to the classification of WFHC shares under federal securities law is granted.

### 3. Admissibility of Expert Testimony of Merritt Fox

Defendants challenge certain portions of the expert testimony of Plaintiffs' proposed corporate law expert, Professor Merritt Fox, on two separate grounds, neither of which has merit. First Defendants seek to preclude Professor Fox from testifying that it is "fair to assume" that the members of the New York Athletic Club who incorporated WFHC and the Club were "sophisticated business and professional people of their time." (Defs. Mem. 2 at 8 (quoting Decl. of Laura Samuels in Support of Defs. Mot. 2 ("Samuels Decl.") (ECF No. 270) Ex. 2 at 8.) Defendants contend that this assumption is completely unsupported and is thus unreliable and inadmissible pursuant to Federal Rules of Evidence 702 and 403. (*Id.* at 9.) The Court disagrees. Professor Fox is permitted to offer his opinion that, based on membership in an affluent club, the price paid for original shares, and the decision to choose different modes of incorporation for WFHC and the Club, (*see* Pls. Opp. 2 at 16), the original incorporators of WFHC were sophisticated businesspeople. Of course, Defendants may challenge the bases underlying Professor Fox's assumptions on cross-examination.

Defendants also argue that Professor Fox should be "precluded from testifying that [] WFHC was required to change how it fulfilled its corporate purpose once one or more shareholders were no longer [] Club members." (Defs. Mem. at 6.) However, Defendants misstate Professor Fox's proposed testimony. Professor Fox has not opined that WFHC was legally required to change its corporate purpose. Rather, Professor Fox's opinion is that WFHC was formed as a for-profit business corporation, and that although it could further its corporate purpose in its early years without dealing with the Club at arms-length, since WFHC membership and Club

membership were identical, it could no longer maximize returns to all of its shareholders when the requirement of share ownership as a condition of Club membership was eliminated without altering its relationship with the Club. (*See* Samuels Decl. Ex. 1 at 5–7.) Professor Fox's testimony is relevant to WFHC's corporate purpose and the scope of WFHC's fiduciary duties towards its shareholders, which Plaintiffs contend were breached through the 2013 lease extension. His opinion that WFHC was created to provide a return to shareholders directly supports Plaintiffs' theory of corporate purpose. His explanation that, at its inception, WFHC was fulfilling this purpose even though it was engaged in non-arms-length transactions with the Club, but that WFHC could not no longer fulfill this purpose through the same course of conduct after membership in the Club and WFHC shareholder status diverged suggests that Director Defendants acted in violation of their fiduciary duties by entering a sweetheart lease with the Club in 2013.

For the foregoing reasons, the portion of Defendants' motion seeking to preclude the testimony of Professor Fox is denied.

### 4. Admissibility of Expert Testimony of Jeffrey Baliban

Defendants seek to preclude the expert testimony of Jeffrey Baliban to the extent it references a legal memorandum from 1961 prepared by the law firm Kelley Drye Newhall and Maginnes (the "Kelley Drye memo"). (Defs. Mem. 2 at 12–14.) Plaintiffs assert in their opposition that they "will not ask Mr. Baliban any questions about the Kelley Drye memo, and will not seek to elicit any testimony from Mr. Baliban concerning the contents of that memo." (Pls. Opp. 2 at 5.) Since both parties agree that such testimony will not be solicited, Defendants' motion to preclude Mr. Baliban's testimony to the extent it concerns the Kelley Drye memo is denied without prejudice as moot.

**C. Defendants' Motion to Exclude Certain Evidence Related to Liability**

Defendants' next motion seeks to exclude several categories of evidence as irrelevant to the issues remaining in this action. Specifically, Defendants seek to exclude (1) evidence related to time-barred leases; (2) evidence relevant to Defendants' alleged fraud or misrepresentations in communications or transactions with shareholders, including in WFHC's financial statements, and to the allegedly illegal share transfer restrictions enforced by Defendants; (3) evidence regarding WFHC's activities with respect to lost shareholders for whom it has no contact information; and (4) evidence related to Defendants' liability insurance. (Defs.' Mem. in Support of Defs. Mot. 3 ("Defs. Mem. 3") (ECF No. 281).) Defendants also move to exclude testimony from Plaintiffs' proposed witnesses whose testimony is unrelated to corporate purpose or the 2013 lease. (*Id.*) Plaintiffs oppose the motion, stating that much of Defendants' motion is impermissibly broad, and disputing that the evidence highlighted by Defendants is irrelevant to Defendants' liability. (Pls.' Mem. Opp. Defs. Mot. 3 ("Pls. Opp. 3") (ECF No. 307).) For the following reasons, Defendants' motion is granted in part, denied in part, and reserved in part.

**1. Evidence Related to Leases Preceding the 2013 Lease Extension**

As Defendants correctly observe, and as set forth in greater detail above, "by order dated March 12, 2019, this Court ruled that the only claims left for trial concern the appropriateness of one contract: the 2013 lease extension [] between [WFHC] and the [Club]." (Defs. Mem. 3 at 1.) Relatedly, the Court explained that Plaintiffs' claims arising from the 2013 lease extension depend on the threshold question of WFHC's corporate purpose. *See Busher*, Docket 227 at 15. Thus, the March 2019 Opinion clearly limited the issues remaining in this action. Nonetheless, Plaintiffs have resisted tailoring their case for trial in accordance with the Court's order, necessitating further clarification from the Court that "the only relevant occurrence remaining in this action is the 2013

lease extension." *Busher*, Docket 244 at 5. Notwithstanding this clarification, Plaintiffs continue

to argue that they should be permitted to litigate the validity of the 1947 Lease Amendment at trial

next month. (*See* Pls. Opp. 3 at 3–4; Joint Final Trial Report (ECF No. 257) at 6 ("Plaintiffs allege

that the 1947 amendment of the original lease, and Defendants' extension of the amended lease in

2013, constituted acts of corporate waste . . . and are therefore void.").)

The validity of the 1947 Lease Amendment is not an issue that may be properly litigated

in this case. The Court has now repeated numerous times that "[e]vents preceding [the 2013] lease

extension and outside of the statutory period are not actionable," and has reminded the parties that

they "should not rely on or attempt to prove such events in their pretrial submissions or at trial."

*Busher*, Docket 244 at 5. That Plaintiffs have now decided to cloak their time-barred claim arising

from the 1947 Lease Amendment in the new legal theory that all extensions of the 1947 Lease

Amendment, including the 2013 lease extension, are void *ab initio*, (Pls. Opp. 3 at 4), does not

alter the Court's conclusion. Indeed, Plaintiff first introduced their new legal theory two months

ago in their October 2019 letter asking the Court to withdraw or stay the October 2019 Opinion,

and the Court nonetheless denied that request and adhered to its decision. (*See* ECF No. 256.) The

Court notes, in addition, that allowing Plaintiffs to introduce a new legal theory that revives a time-

barred claim nine months after issuing its decision disposing of that claim, and less than one month

before the start of trial, would be highly prejudicial to Defendants.

Accordingly, the Court adheres to its prior decisions and declines to endorse Plaintiffs'

creation of brand-new legal theories, which Plaintiffs have not pursued in the approximately five

years since they commenced this action, on the eve of trial, in order to avoid the effect of the

Court's rulings. *See Farouki v. Petra Int'l Banking Corp.*, No. 08-cv-2137, 2013 WL 12309520,

*2 (D.C. Cir. June 12, 2013) (application to amend pleading is properly denied "when a party—

without explanation for the delay—springs new facts and legal theories on the eve of trial"); *Sanai v. Sanai*, No. C02-2165Z, 2005 WL 1172437, at *1–*2 (W.D. Wash. May 18, 2005) (plaintiffs not permitted to adopt a new legal theory to allow previously dismissed claims to continue on the eve of trial, after the close of discovery, and after the dispositive motions deadline); *see also Beck v. Met. Prop. And Casualty Ins. Co.*, No. 3:13-cv-00879, 2016 WL 4978411, *1 (D. Or. Sept. 16, 2016) (considering defendant's decision "to advance for the first time on the eve of trial a completely new and significant legal theory, and to do so through the awkward procedural mechanism of an evidentiary motion" in calculating attorneys' fees plaintiff was entitled to). The portion of Defendants' motion seeking to exclude evidence or testimony related to the 1947 Lease Amendment is granted to the extent that Plaintiffs may not attempt to prove the validity of the 1947 Lease Amendment at trial. Insofar as Plaintiffs argue that general information regarding the 1947 Lease Amendment may be relevant for purposes of providing background to the 2013 lease extension, the Court reserves decision on whether general evidence or testimony related to the 1947 Lease Amendment is relevant and admissible under the circumstances that present themselves at trial.[5]

As to Plaintiffs' contention that they may introduce evidence in connection with the Club's exercise of a lease extension option granted by WFHC in 2002, the Court has stated numerous times that "the only relevant occurrence remaining in this action is 2013 lease extension," *Busher*, Docket 244 at 5, defined in the Court's March 2019 Opinion as the extension that "extends the lease from 2050 through October 2071," *Busher*, Docket 227 at 3. Accordingly, the portion of Defendants' motion seeking to preclude the introduction of evidence related to the 2002 lease extension and the Club's exercise of an option granted in that lease extension is denied.

---

[5] The Court suspects, however, that far less information regarding the 1947 Lease Amendment is necessary for background purposes than Plaintiffs contemplate.

## 2. Evidence Related to Defendants' Alleged Fraud and Misrepresentations in Communications or Transactions with Shareholders

Defendants argue that evidence relating to Defendants' alleged fraudulent statements and misrepresentations to current and former non-original shareholders other than Plaintiffs, and to the enforcement of transfer restrictions printed on WFHC shares, is irrelevant to the claims remaining in this action and improper in a derivative lawsuit. (Defs. Mem. 3 at 4–8.) Defendants observe that much of the evidence Plaintiffs seek to introduce in this regard pre-dates the statutory limitations period and has no bearing on WFHC's original corporate purpose or whether Defendants' entering the 2013 lease extension breached their fiduciary duties to shareholders. (*Id.*) Defendants also note that Plaintiffs have not produced any evidence that any purported fraud or misrepresentation to an individual shareholder caused damages to WFHC, as required to state a derivative claim. (*Id.* at 6.)

Plaintiffs counter that the challenged evidence is relevant to Plaintiffs' claims because it shows that the 2013 lease extension was part of a "common course of conduct in which the Director Defendants acted as agents of the Club while maintaining the pretense of serving as fiduciaries of [WFHC] and its shareholders." (Pls. Opp. 3 at 9.) Plaintiffs assert that Defendants' "scheme to control" WFHC is also relevant to WFHC's corporate purpose and to the nature of relief that may be appropriate should Plaintiffs prevail on the issue of liability. (*Id.* at 10–11.)

Plaintiffs' alleged "scheme to control" appears to be another attempt to backdoor in significant amounts of evidence related to claims that the Court has dismissed as time-barred. However, the fact that Plaintiffs invoke the same theory, i.e., that Defendants acted to enrich the Club, to explain different species of Defendants' conduct does not make all conduct which could conceivably fit under that theory relevant to Plaintiffs' claims. At trial, the jury will not be asked to decide whether Defendants engaged in a decades-long scheme to defraud shareholders of

WFHC for the benefit of the Club. That is not a claim in this case. Instead, the jury will be asked whether Defendants' *entry into the 2013 lease extension* constituted a breach of Defendants' fiduciary duties, the scope of which will be determined by WFHC's corporate purpose. That Plaintiffs can prove prior bad acts of Defendants related to their representations to shareholders, many of which took place prior to June 16, 2008, does not aid resolution of that question. Nor does Director Defendants' purported facilitation of the Club's purchase of WFHC shares bear upon WFHC's original corporate purpose. On the contrary, such evidence would only serve to confuse the jury as to the issues it is to consider. It would also substantially prejudice Defendants and would imply that jurors may properly consider evidence of Defendants' past wrongdoing in deciding whether they breached their fiduciary duties in 2013. *See New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476, 480 (S.D.N.Y. 2016) (defendant's proposed evidence of fraud or defenses sounding in fraud, where fraud-based counterclaims had previously been dismissed, was precluded as both irrelevant and substantially prejudicial to plaintiff); *see also* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *United States v. Lyles*, 593 F.2d 182, 195 (2d Cir. 1979) ("The greater the danger of prejudice, the more justification must be shown for the introduction of challenged evidence.") (citation omitted).

Plaintiffs' argument that evidence of Defendants' past fraudulent behavior is relevant to the issue of the remedy Plaintiffs are entitled to is similarly without merit. Plaintiffs argue it is logical to assume that if the 2013 lease were rescinded, "the Club would simply use its entrenched control over [WFHC] . . . to find other ways to continue looting [WFHC]'s assets," as evidenced by "the Club's scheme to control [WFHC]." (Pls. Opp. 3 at 10.) Therefore, argue Plaintiffs,

monetary damages or the dissolution and sale of WFHC are more appropriate remedies than rescission.  (*Id.*)  Plaintiffs' line of reasoning rests upon the unsupported premise that Defendants will continue to violate their fiduciary duties in unspecified ways unless the Court orders a remedy that will provide monetary compensation to Plaintiffs.  The Court is unpersuaded by this theory.

Plaintiffs' argument that their proposed evidence of a scheme to control WFHC is relevant to corporate purpose is also unavailing.  As the Court has stated, while certain evidence related to WFHC shares does bear upon whether WFHC's purpose was to enrich its shareholders, not every fact or theory related to the shares does so.  Defendants' alleged practice, beginning in the 1970s, of restricting the transfer of WFHC shares and attempting to consolidate the Club's majority shareholder status in part through such restrictions does not make it more likely than not that WFHC was formed to enrich its shareholders.

Finally, Plaintiffs argue that their proposed evidence supports their derivative claims because Defendants' fraudulent shareholder communications and share transfer restrictions constitute acts of "looting" WFHC by entrenching the Club's control of WFHC.  (Pls. Opp. 3 at 7–8.)  Plaintiffs raise these claims in the Joint Final Trial Report only in the context of their alternative claim for dissolution, and not in the context of their derivative claims.[6]  (*See* Joint Final Trial Report at 5.)  Previously, Plaintiffs invoked evidence related to shareholder communications and transfers to demonstrate that Defendants looted WFHC by pursuing a scheme "to purchase and accumulate shares from non-member shareholders in order to consolidate the Club's majority control over WFHC and thereby remove potential obstacles" to purportedly unfair leases. (Pls.' Mem. in Support of Mot. for Partial Summ. J. (ECF No.194) at 47.)  However, WFHC gained

---

[6] Plaintiffs raise these claims, which are separate from and unrelated to the 2013 lease, in spite of their initial assertion that "In light of the Court's rulings, all claims for relief stated in Plaintiffs' amended complaint remain to be tried to the extent the claims relate to Defendants' extension in 2013 of the lease between [WFHC] and [the Club]."  (Joint Final Trial Report at 3.)

majority shareholder status by 1983. *See Busher*, Docket 227 at 4. It appears that Plaintiffs have now amended their theory of liability to suggest that Defendants' scheme to advance the Club's control over WFHC harmed WFHC in some manner unrelated to the lease extensions or to the Club's power as majority shareholder. Plaintiffs have not disclosed what that harm entailed, or how they expect to prove any damages to WFHC arising from Defendants' post-2008 actions in this regard. In other words, Plaintiffs appear to have introduced a new legal theory without evidentiary support, on the eve of trial, in order to revive a claim that was dismissed by the Court nine months ago. However, Plaintiffs' proposed evidence does not show any harm to WFHC and thus does not support a derivative claim. Plaintiffs' allegations with respect to the fraudulent actions of Defendants are more properly the subject of the direct action commenced against Defendants in 2016. *See Clune v. Barry*, No. 7:16-cv-4441, Am. Compl., Docket 62.

In sum, the Court is unpersuaded that any evidence related to Defendants' alleged "scheme to control" is relevant to the issues of corporate purpose and the 2013 lease extension. Furthermore, even if such evidence carried any probative value, that value is substantially outweighed by the prejudice it would inflict on Defendants. Accordingly, the portion of Defendants' motion to preclude evidence related to Defendants' alleged fraud or misrepresentations to shareholders, or restricted transactions involving WFHC shares, is granted.

### 3. Evidence Related to Lost Shareholder Contact Information

Defendants next argue that Plaintiffs should be precluded from presenting evidence regarding WFHC's alleged failure to proactively seek out updated contact information for certain shareholders. (Defs. Mot. 3 at 8–9.) Plaintiffs contend that such evidence is relevant to the "scheme to control" discussed above, to assess appropriate remedies should Plaintiffs prevail at trial, and to explain why Defendants extended the 1947 Lease Amendment using option

instruments rather than formally replacing or amending the original lease. (Pls. Opp. 3 at 11–12.) As to the first of these rationales, the Court has considered and rejected Plaintiffs' argument that evidence is *per se* relevant if it is indicative of Defendants' attempts to consolidate the Club's control over WFHC. Similarly, Plaintiffs' assertion that whether Defendants actively sought out contact information for "lost" shareholders is relevant to whether rescission is an appropriate remedy is without merit for reasons the Court has already discussed. Finally, the rationale behind the instrument used by WFHC to extend its lease with the Club is not relevant to any issue in this case. The Court can discern no basis for the entry of Plaintiffs' proposed evidence at trial. Accordingly, the portion of Defendants' motion seeking to preclude Plaintiffs from introducing evidence regarding WFHC's failure to contact shareholders who have not updated their contact information is granted.

### 4. Defendants' Liability Insurance

Federal Rule of Evidence 411 ("Rule 411") precludes parties from offering evidence that a person was or was not insured against liability to prove whether the person acted negligently or otherwise wrongfully. Fed. R. Evid. 411. However, "Rule 411 is not a bar to the introduction of evidence regarding liability insurance in all cases." *Weiss*, 293 F. Supp. 2d at 413. A court may admit such evidence for another purpose, "such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411.

Defendants seek to preclude Plaintiffs from introducing any evidence regarding Defendants' liability insurance arrangements. (Defs. Mem. 3 at 10–11.) Plaintiffs agree that they will not seek to offer most of the evidence of Defendants' liability insurance identified in Defendants' moving papers. (Pls. Opp. 3 at 12–13.) However, Plaintiffs contend that they should be permitted to offer evidence at trial relating to an indemnification agreement between WFHC

and the Club, dated October 15, 2013 (the "Indemnification Agreement"), as evidence of Defendants' culpability. (*Id.*) While this is not a permissible purpose for which to offer indemnification evidence pursuant to Rule 411, Plaintiffs state that because the Indemnification Agreement was executed after WFHC entered the 2013 lease extension, they are entitled to an exception from the rule. Specifically, Plaintiffs aver that "[a]n indemnification agreement, obtained *after* wrongdoing, is admissible as evidence of consciousness of wrongdoing." (*Id.* at 12.)

Plaintiffs cite a single Texas District Court case for this proposition. *See DSC Communications Corp. v. Next Level Communications*, 929 F. Supp. 239 (E.D. Tex. 1996). That case involved indemnity agreements under which a buyer of a corporation agreed to indemnify the corporation's former employees for any liabilities incurred in a trade secret misappropriation action that had been recently commenced by their former employer. *Id.* at 241–42. The Texas District Court determined for various reasons, including that the agreements were isolated business arrangements and did not insure against future risk, that the indemnification agreements did not constitute liability insurance under Rule 411, and were not inadmissible pursuant to that rule. *Id.* at 242–45. It did not determine that any indemnification agreement "obtained *after* wrongdoing" is "admissible as evidence of consciousness of wrongdoing." Plaintiffs, resting on their mischaracterization of the Texas District Court's holding, make no attempt to analogize the Indemnification Agreement with the facts of the case they cite.

Since Plaintiffs have presented no basis for the admission of the Indemnification Agreement pursuant to Rule 411, and the Court does not find that references to the Indemnification Agreement would serve any probative purpose as to the issues remaining for trial, the portion of

Defendants' motion seeking to preclude evidence related to the Indemnification Agreement is granted.

### 5. Inadmissible Witness Testimony

Defendants ask the Court to exclude testimony from several of Plaintiffs' proposed witnesses who, according to Defendants, are only expected to testify on topics unrelated to corporate purpose or the 2013 lease extension. First, Defendants state that the testimony of Plaintiffs' proposed expert, Craig Jacobson, should be excluded as irrelevant and prejudicial because it relates solely to the historical value of a WFHC share, dating back to 1923, and whether the prices paid for a WFHC share over its history were reasonable. (Defs. Mem. 3 at 11–12.) Specifically, Mr. Jacobson will testify that he calculated an indicative, present-day price for a WFHC share based on the valuation of WFHC's property performed by Plaintiffs' expert Eric Haims, and indexed this present-day price to economic indices such as the Dow Jones Industrial Average, the S&P 500, and the Consumer Price Index in order to calculate similar indicative prices for WFHC shares in past years. (*See* Pls. Opp. 3 at 14; Defs. Mem. 3 Ex. 14.) Based on his comparison of the indicative prices to the actual, transactional prices historically paid for WFHC shares, Mr. Jacobson will testify that while in the 1920s and 1930s, the actual transactional prices for WFHC shares closely correlated with the indicative prices, from the year 1945 onwards, the indicative prices exceeded the transactional share prices by varying but consistently large amounts. (*Id.*) Further, Mr. Jacobson will testify that prior to 1945, price movements of WFHC shares correlated with the movement of the indices, but that after that year, transactional prices moved arbitrarily in relation to the market-reflective indicative prices, displaying no apparent linkage with underlying value. (*Id.*) Mr. Jacobson intends to opine that (1) since 1945, "the prices paid for WFHC stock were not reasonable and were significantly lower than the indicated value of the

stock," and (2) "in recent decades, the prices paid for WFHC stock were frequently even more dramatically lower than the indicated value of the stock." (Defs. Mem. 3 Ex. 14 (ECF No. 285).)

Defendants argue that these facts are irrelevant to WFHC's corporate purpose, liability, or Plaintiffs' damages. Plaintiffs disagree, contending that Mr. Jacobson's testimony is relevant to WFHC's corporate purpose insofar as it tends to support Plaintiffs' theory that WFHC shares were originally equity securities intended "to provide a prospective return related to the value of [WFHC]'s assets." (Pl. Opp. 14.) While certain aspects of WFHC stock, particularly around the time of WFHC's founding, might be relevant to whether WFHC's original shareholders expected WFHC to produce a profit for them, the Court can discern no reason why the reasonableness of the transactional prices of WFHC shares throughout its nearly one-hundred-year-long history would have any bearing on that question, regardless of whether such prices tracked hypothetical indicative prices. Since it appears that Mr. Jacobson's testimony will be limited to that issue, the Court concludes that it should be precluded as irrelevant.

As to Defendants' arguments that an additional twelve fact witnesses should be precluded as irrelevant, (Defs. Mem. 3 at 13–15), the Court does not have enough information about their expected testimony to conclude that their testimony would have no conceivable relevance to any issue in this case. Accordingly, the Court declines to categorically preclude Plaintiffs from calling these witnesses. However, the Court cautions that the testimony of these witnesses is required to conform with the Court's rulings to date. The portion of Defendants' motion seeking to preclude certain fact witnesses is preliminarily denied, without prejudice to Defendants' re-raising their objections during trial.

**D. Defendants' Application for Dismissal of Plaintiffs' Dissolution Claim**

Since the issue of damages will be tried separately from and subsequently to the issue of liability in this matter, the Court reserves decision on the majority of the issues raised in Defendants' two motions *in limine* concerning evidence of damages. However, one issue raised by Defendants warrants the Court's present consideration. Specifically, Defendants argue that Plaintiffs' cause of action seeking judicial dissolution of WFHC must be dismissed because the Court lacks subject matter jurisdiction to hear such a claim. (Defs. Mem. in Support of Defs.' Mot. 4 ("Defs. Mem. 4") (ECF No. 287) at 11.) Plaintiffs oppose dismissal of their dissolution claim, asserting that it is not jurisdictionally barred, that Defendants have waived their right to seek the Court's abstention, and that, in any event, the Court should decline to exercise abstention. (Pls.' Mem. Opp. Defs. Mot. 4 ("Pls. Opp. 4") (ECF No. 308) at 13–15.)

Whether the Court has subject matter jurisdiction over a claim to dissolve a corporation is a question that has not been resolved by the Second Circuit. *See Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (discussing competing authority with respect to whether or not federal courts have subject matter jurisdiction over dissolution claims and concluding that "we need not authoritatively resolve [that issue] at this time"). In any event, however, "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (internal quotation marks omitted). One such class of exceptional circumstances was recognized by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 332–34 (1943). Pursuant to the *Burford* abstention doctrine,

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the

result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted).

The Second Circuit has "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public," which are as follows: "1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998)) (internal quotation marks omitted). In general, *Burford* abstention is appropriate when a federal court determines that "the strong interest in having certain classes of cases, and certain federal rights, adjudicated in federal court" outweighs "the State's interests in maintaining uniformity in the treatment of an essentially local problem." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. at 728.

A claim for judicial dissolution implicates *Burford*, "given the comprehensive regulation of corporate governance and existence by New York." *Friedman*, 38 F.3d at 671. The Second Circuit has explicitly recognized that "New York has a strong interest in the creation and dissolution of its corporations." *Id.* Furthermore, the Second Circuit, in reviewing a district court's decision to abstain from exercising jurisdiction over a dissolution claim for abuse of discretion, has noted that in such cases, abstention "would avoid needless interference with New York's regulatory scheme governing its corporations." *Id.* In accordance with that rationale, district courts within this Circuit have routinely, and almost uniformly, elected to exercise *Burford*

abstention over claims for the dissolution of a corporation formed under state law.  *See, e.g.*, *Mecca v. Lennon*, No. 16-cv-1414, 2017 WL 1410790, at *5 (E.D.N.Y. Apr. 18, 2017); *Sojitz Am. Capital Corp. v. Keystone Equip. Fin. Corp.*, 88 F. Supp. 3d 59, 62 (D. Conn. 2015); *Kermansah v. Kermansah*, 580 F. Supp. 2d 247, 271 (S.D.N.Y. 2008); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296–98 (E.D.N.Y. 1999); *see also Friedman*, 38 F.3d at 671 (noting that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming that jurisdiction existed").

Here, it is unnecessary for the Court to reach the merits of Defendants' jurisdictional challenge because even assuming that the Court does possess jurisdiction to dissolve WFHC, the Court finds it proper to abstain from exercising that power.  WFHC, a corporation formed under the laws of the state of New York, is a creature of the state, and its dissolution necessarily implicates New York's comprehensive system of corporate governance.  The fact that Plaintiffs say they are pursuing a claim for dissolution under common law, rather than a state statute, (*see* Pls. Opp. 4 at 15), does nothing to alter this fact, or New York's "strong interest in the creation and dissolution of its corporations."  *Friedman*, 38 F.3d at 671.  Moreover, the Court is unpersuaded by Plaintiffs' argument that Defendants have waived the right to seek the Court's abstention.  (*See* Pls. Opp. 4 at 13–14.)  While the Court does not endorse Defendants' delay in raising this issue, Plaintiffs have demonstrated neither that waiver of *Burford* abstention is a recognized concept in this Circuit, nor that they would be prejudiced by the Court's exercise of abstention at this phase in the proceedings.  Indeed, Plaintiffs admit that "[i]f the Court abstained

from exercising jurisdiction over the dissolution claim, Plaintiffs would be able to re-file the cause of action in New York Supreme Court, Westchester County." (Pls. Opp. 4 at 14 n.18.)

For the foregoing reasons, the Court finds abstention appropriate as to Plaintiffs' dissolution claim, without ruling on the issue of subject matter jurisdiction. The portion of Defendants' motion *in limine* seeking dismissal of that claim is granted. The Court reserves decision on the remainder of the motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions *in limine*, (ECF Nos. 273, 275, & 280), are GRANTED in part and DENIED in part. Defendants' motions *in limine* concerning evidence bearing on the question of liability, (ECF Nos. 264, 268, & 278), are GRANTED in part, DENIED in part, and RESERVED in part. Defendants' motion *in limine* which seeks, in relevant part, dismissal of Plaintiffs' dissolution claim, (ECF No. 286), is granted to the extent that such claim is dismissed without prejudice to Plaintiffs' asserting the claim in a state court action, and the Court otherwise reserves decision on all other aspects of the motion. The Court likewise reserves decision on Defendants' motion *in limine* seeking to preclude evidence of the theoretical development of the Winged Foot property, (ECF No. 265).

The Clerk of the Court is directed to terminate the motions at ECF Nos. 273, 275, 280, 264, 268, & 278.

Dated:  December 18 , 2019                    SO ORDERED:
        White Plains, New York

                                              NELSON S. ROMÁN
                                              United States District Judge

45